**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALVIN JONES (A718172), | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-14112 |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS DEP'T OF CORRECTIONS, | ) | |
| *et al.*, | ) | Judge Jeffrey I. Cummings |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Alvin Jones brings his second amended complaint ("Complaint") against the

Illinois Department of Corrections ("IDOC"), Warden Charles Truitt ("Truitt"), Assistant Warden

Kenneth Osbourne ("Osbourne"), Medical Director Marlene Henze, Nurse Director Michelle

Smith, Nurse Director Jane Doe, and Wexford Health Services, Inc. ("Wexford"). (Dckt. #61).

Jones alleges that defendants violated his rights (1) to be free from cruel and unusual punishment

under the Eighth Amendment; (2) to due process under the Fourteenth Amendment; and (3) to

indemnification under Illinois law, as well as his rights under (4) the Americans with Disabilities

Act (42 U.S.C. §12101, *et seq.*) ("ADA"); and (5) the Rehabilitation Act (29 U.S.C. §701, *et

seq.*), by failing to provide him with his prescribed pain medication.

Before the Court is a motion to dismiss brought by defendants IDOC, Truitt, and

Osbourne (the "moving defendants"), who seek dismissal of certain claims under Federal Rule of

Civil Procedure 12(b)(6). (Dckt. #64). Defendants Henze, Smith, Doe, and Wexford do not

move to dismiss any claims against them; and the moving defendants do not move to dismiss any

Eighth Amendment claims brought against Truitt or Osbourne in their individual capacities.

(*Id.*). Plaintiff has conceded that his Fourteenth Amendment and indemnification claims can be

dismissed, (Dckt. #69 at 11–12), in addition to any claims under Section 1983 for monetary damages against Truitt and Osbourne in their official capacities, (*id.* at 7, 9).

What remains at issue are the following: (1) plaintiff's *Monell* claims against IDOC, Truitt, and Osbourne; (2) plaintiff's Eighth Amendment claims against IDOC; (3) plaintiff's Eighth Amendment claims seeking injunctive relief against Truitt and Osbourne in their official capacities; and (4) plaintiff's ADA and Rehabilitation Act claims. For the reasons that follow, defendants' motion to dismiss, (Dckt. #64), is granted in part and denied in part.

## I.      LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires a plaintiff to "go beyond mere speculation or conjecture." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nonetheless, the "notice-pleading standard is deliberately undemanding." *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (cleaned up). To this point, the Federal Rules require "no more than a statement of the claim" without the pleading of evidence to support it, *Berk v. Choy*, 607 U.S. ___, 2026 WL 135974, at *5 (2026), and the Rules likewise "do not require a plaintiff to plead legal theories." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996). Moreover, in opposing a Rule 12(b)(6) motion, a plaintiff is free to "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 n.2 (7th Cir. 2021) (cleaned up).

When considering a motion to dismiss under Rule 12(b)(6), the Court "constru[es] the complaint in the light most favorable to the plaintiff[] and accept[s] all well-pleaded factual

allegations as true." *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019); *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). Nonetheless, "district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim." *Esco*, 107 F.4th at 678–79 (cleaned up). Dismissal is only warranted if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007).

## II.   FACTS

Plaintiff, an inmate at Stateville Correctional Center at all times relevant to his claims, has received medical treatment for extreme neck, back, and head pain from Wexford Health Services, Inc. (Dckt. #61 ¶13). In 2019, Jones was diagnosed with chronic neck pain, degenerative disc disease, leg radiculopathy, and lumbosacral axial pain. (*Id.*). He has been, and remains, under the care of specialists from the University of Illinois, and from 2016 to 2023 his treatment included regular trips to receive pain shots from those specialists. (*Id.*; Dckt. #69 ¶10). On or before February 2, 2023, Jones was prescribed medication to manage his pain: two Tramadol and four Gabapentin to be taken for daytime pain relief, and the same to be taken for nighttime pain relief. (Dckt. ##61 ¶14, 69 ¶11).

On February 16, 2023, Jones needed a refill of his prescribed pain medication. (Dckt. #61 ¶15). On February 17, 2023, he made a sick call in which he explained to the nurse that he needed a refill of his Tramadol and Gabapentin to relieve his neck, back, and head pain. (*Id.*) He did not receive his medication. (*Id.*). On each subsequent day between February 17, 2023 and March 17, 2023, Jones approached medical staff at Stateville Correctional Center seeking his prescribed medication; on each day he was denied treatment. (Dckt. #69 ¶15). In addition, on February 25, March 2, and March 7, Jones made three subsequent sick calls, each time seeking a refill of his Tramadol and Gabapentin from the sick call nurse. (Dckt. #61 ¶¶16–18). Other than

3

ibuprofen he received on March 7, 2023, Jones did not receive any medication during these visits, including his prescribed pain medication. (*Id.*).

Jones' pain became increasingly severe in the month he could not obtain his prescribed pain medication, at times rising to a level six to nine out of ten. (*Id.* ¶17). He experienced heightened blood pressure and difficulty walking, sleeping, and bending due to the pain. (*Id.* ¶¶17–18; Dckt. #69 ¶7). During the period when Jones repeatedly sought medical treatment, defendants made no effort to procure Jones' medication or provide alternative medical care. (Dckt. #61 ¶20). Jones did not receive his next dose of prescribed pain medication until March 17, 2023. (Dckt. #69 at 12).

In 2024, Stateville Correctional Center closed, *Dobbey, et al. v. Weilding, et al.*, No. 1:13-cv-1068, Order (N.D.Ill. Aug. 9, 2024), and Jones was moved to Danville Correctional Center, (Dckt. #36).

## III.  ANALYSIS

At issue is the moving defendants' motion to dismiss plaintiff's (1) *Monell* claims against IDOC, Truitt, and Osbourne; (2) Eighth Amendment claims against IDOC; (3) Eighth Amendment claims seeking injunctive relief against Truitt and Osbourne in their official capacities; and (4) ADA and Rehabilitation Act claims. (Dckt. #64).

### A.  Section 1983 Claims

Jones brings his *Monell* and Eighth Amendment claims pursuant to Section 1983. (Dckt. #61 ¶1). For the reasons that follow, he fails to state a *Monell* claim against any defendant or an Eighth Amendment claim against IDOC. He does, however, state an Eighth Amendment claim for injunctive relief against Truitt and Osbourne in their official capacities.

4

Section 1983 provides a civil right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. §1983. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to [said deprivation] shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." *Id.* Unlike units of local government, a state is not a "person" under Section 1983, so there is no cause of action under Section 1983 against states or state agencies. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65–66, 71 (1989); *cf. Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978) (finding that units of local government are persons under section 1983). Section 1983 does permit, however, official-capacity suits against state officials seeking prospective relief, *id.*, and under *Ex parte Young*, such suits are not barred by the Eleventh Amendment, 209 U.S. 123, 159 (1908); *see Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 515 (7th Cir. 2021); *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049–50 (7th Cir. 2013).

1. **Jones Fails to State a *Monell* Claim.**

At the outset, Jones fails to state a *Monell* claim against any defendant. *Monell* creates liability for municipalities under Section 1983 where the "execution of a government's policy or custom" inflicts a constitutional injury. *Monell*, 436 U.S. at 694. As the moving defendants correctly point out, "[t]he Illinois Department of Corrections is an arm of the state of Illinois." *Weaver v. Kelley*, No. 21 CV 203, 2023 WL 8701073, at *5 (N.D.Ill. Dec. 15, 2023). The Supreme Court "has been clear, however, that Monell's holding applies only to municipalities and not states or states' departments," so neither IDOC nor its officials can be held liable under

5

*Monell. Joseph v. Bd of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748–49 (7th Cir. 2005).

Moreover, Jones fails to address the moving defendants' argument that IDOC, Truitt, and Osbourne are not suable under *Monell*, thereby waiving any arguments with respect to his *Monell* claims against the moving defendants. *See, e.g.*, *Sroga v. Rendered Servs., Inc.*, No. 19-CV-2299, 2019 WL 6174324, at *1 (N.D.Ill. Nov. 20, 2019) ("It is a longstanding rule that a plaintiff waives his claims when he fails to develop arguments or fails to respond to alleged deficiencies in a motion to dismiss.") (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)). Accordingly, the moving defendants' motion to dismiss is granted with respect to Jones' *Monell* claims.

### 2. Jones Fails to State an Eighth Amendment Claim Against IDOC.

Jones also fails to state an Eighth Amendment claim pursuant to Section 1983 against IDOC. Again, IDOC is a state agency and, as such, is not a "person" subject to suit under Section 1983. *See Motley v. Illinois Dep't of Corrs.*, 24 CV 13221, 2025 WL 222772, at *1 (N.D.Ill. Sep. 2, 2025). Plaintiff appears to argue that IDOC can be held liable under Section 1983 because the state waived sovereign immunity as to Section 1983 by waiving sovereign immunity as to the ADA and the Rehabilitation Act. (S*ee* Dckt. #69 at 7–9). Even if that were true—which it is not—the Court's dismissal of plaintiff's Section 1983 claim against IDOC is not based on Eleventh Amendment sovereign immunity, but on the fact that a state is not a person under Section 1983. *Weaver*, 2023 WL 8701073, at *5 ("Because the state is not a 'person' under §1983, it is not necessary to analyze whether IDOC 'waived' Eleventh Amendment immunity."); *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002); *Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 925–26 (7th Cir. 2012) ("We don't need to

6

address state sovereign immunity where we can resolve the issue by examining whether the defendants are 'persons' under §1983.").

**3. Jones States an Eighth Amendment Claim for Injunctive Relief Against Truitt and Osbourne.**

The remaining Section 1983 claims at issue are the Eighth Amendment deliberate indifference claims for injunctive relief that Jones brings against Truitt and Osbourne in their official capacities. The moving defendants argue that Jones cannot claim injunctive relief against Truitt and Osbourne because (1) he does not request any specific injunctive relief, (Dckt. #71 at 4–5); and (2) any injunctive relief he might seek is moot in light of his transfer to Danville Correctional Center, (Dckt. #64 at 4–5). Additionally, they argue that Jones fails to state a standalone Eighth Amendment deliberate indifference claim for IDOC's allegedly inadequate grievance process. The Court disagrees for the following reasons.

To begin, Jones does not need to specify the injunctive relief he seeks at the pleading stage and, in fact, "[c]omplaints do not need to define the desired relief at all." *Generations Health Care Network, LLC v. Norwood*, No. 18 CV 0267, 2019 WL 10379462, at *5 (N.D.Ill. Mar. 8, 2019) (citing *Blagojevich v. Rumsfeld*, 202 Fed.Appx. 924, 925 (7th Cir. 2006) ("[C]omplaints need not plead law or define the desired relief.")); *see also Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 948 (7th Cir. 2006); *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). Indeed, "failure to specify relief to which the plaintiff was entitled [does] not warrant dismissal under Rule 12(b)(6)." *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002).

Furthermore, contrary to defendants' position, the injunctive relief that Jones *does* seek is not moot. A claim for relief is generally only moot when the "issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Lukaszczyk v. Cook Cnty.*, 47

7

F.4th 587, 596 (7th Cir. 2022) (cleaned up).  The moving defendants argue, citing *White v. Fields*, No. 20-cv-751-NJR, 2022 WL 2116449, at *2 (S.D.Ill. June 13, 2022) and *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996), that any request for injunctive relief is moot because Jones was transferred to Danville Correctional Center and cannot demonstrate that he will likely be transferred back to Stateville Correctional Center, which closed in 2024.  (Dckt. #64 ¶¶15–16).

The Court takes judicial notice of the fact of Statesville's closure,[1] but it does not moot Jones' claim because the injunctive relief he seeks is not specific to Stateville, *cf. White*, 2022 WL 2116449, at *2 (concerning medical records kept specifically at USP-Marion); *Higgason*, 83 F.3d at 811 (alleging constitutional violations at a particular cellhouse within Indiana State Prison).  Moreover, this case is distinguishable from *White* because there, no individual defendant was assigned to the plaintiff's new prison.  *See White*, 2022 WL 2116449, at *2 ("White is no longer housed at USP-Marion and is now at FCI-Terre Haute. . . . None of the Defendants are assigned to Terre Haute.").  Here, on the other hand, it is not clear from the Complaint where Truitt and Osbourne were (or will be) transferred to after Stateville closed, and this Court will "give the plaintiff[] the benefit of the doubt in this situation" and construe the Complaint in the light most favorable to him.  *Michigan v. U.S. Army Corps of Engineers*, 758 F.3d 892, 895 (7th Cir. 2014).  As such, on the facts alleged in the Complaint, it is plausible that Jones still faces a risk of harm from Truitt or Osbourne if they were (or will be) transferred to Danville Correctional Center.

Lastly, defendants' argument that Jones fails to state a standalone claim for the alleged inadequacy of the prison's grievance process is not a basis for dismissing his Eighth Amendment claim.  "[T]he Constitution does not require that jails or prisons provide a grievance procedure at

---

[1] "It [is] well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss." *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022).

all, nor does the existence of a grievance procedure create a constitutionally guaranteed right. . . . The right at issue is instead a right to constitutionally adequate care." *Daniel v. Cook Cnty.*, 833 F.3d 728, 736 (7th Cir. 2016). For the reasons described above, Jones has sufficiently pleaded a violation of his right to constitutionally adequate care as to Truitt and Osbourne, the sufficiency of his claims about the prison's grievance procedures notwithstanding.

The motion to dismiss is therefore granted as to plaintiff's *Monell* claims against IDOC, Truitt, and Osbourne, and as to his Eighth Amendment claims against IDOC. It is denied as to plaintiff's Eighth Amendment claims for injunctive relief against Truitt and Osbourne in their official capacities.

## B. ADA/Rehabilitation Act Claims

Finally, in response to the motion to dismiss, plaintiff (over defendants' objection) seeks leave to amend his complaint to bring additional claims under the ADA and the Rehabilitation Act. Because the standards under the ADA and the Rehabilitation Act are "functionally identical," *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015), and because the relief available to Jones under the ADA and the Rehabilitation Act is coextensive, "we may dispense with the ADA and the thorny question of sovereign immunity" and only consider the relief available to Jones under the Rehabilitation Act. *Jaros v. Illinois Dep't of Corrs.*, 684 F.3d 667, 672 (7th Cir. 2012).

"[T]he Rehabilitation Act precludes claims against [d]efendants in their individual capacities," *Cesca v. Western Illinois Univ. Bd. of Trs.*, 716 F.Supp.3d 696, 706 (C.D.Ill. 2024); *see also Wilson v. Sood*, 727 Fed.Appx. 220, 223 (7th Cir. 2018) ("[T]he [IDOC] is the proper defendant for this claim because there is no individual liability under the Rehabilitation Act."); *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015), and a

9

Rehabilitation Act claim against an individual in their official capacity is properly brought against the entity of which he is an agent. *See, e.g., Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Accordingly, the Court dismisses Jones' Rehabilitation Act claims against the individual defendants Truitt, Osbourne, Henze, Smith, and Doe.

With respect to IDOC and Wexford, defendants raise four arguments supporting their contention that Jones cannot state a claim under the ADA or Rehabilitation Act (1) Jones should not be permitted to add such claims at all because they were only raised for the first time in his reply; (2) Jones was not denied access to a program or activity on the basis of his disability; (3) Jones did not request any alternative accommodations; and (4) even if Jones were entitled to receive his medication under the ADA or the Rehabilitation Act, IDOC's delay in providing his prescribed pain medication was reasonable. (Dckt. #71 at 6–7). For the reasons that follow, the Court grants Jones leave to amend to allege ADA/Rehabilitation Act claims against defendants IDOC and Wexford.

### 1. Jones Need Not Plead Legal Theories.

Plaintiff does not need to amend his complaint for his ADA and Rehabilitation Act claims to be considered by the Court at this time because, as described *supra*, he is not required to plead legal theories. *Vidimos*, 99 F.3d at 222.

### 2. Jones Adequately Alleges That He Was Denied Access to a Program or Activity That Qualifies for Relief Under the Rehabilitation Act.

To state a claim under the Rehabilitation Act against IDOC or Wexford, Jones must allege that "(1) he is a qualified person (2) with a disability and (3) [IDOC or Wexford] denied him access to a program or activity because of his disability." *Jaros*, 684 F.3d at 672. The moving defendants only dispute the third element. (Dckt. #71 at 6–7.)

Jones raises allegations about programs or activities that qualify for relief under the Rehabilitation Act. He alleges that defendants denied him prescribed pain medication for chronic neck and back pain. That denial affected his ability to walk, bend, and sleep. (Dckt. #69 ¶7). Medical care, mobility, and sleep are quintessential programs or activities within the meaning of the Rehabilitation Act. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) (identifying "such fundamentals as mobility, hygiene, [and] medical care" as programs or activities plausibly within the scope of Title II of the ADA); *McDaniel v. Syed*, 115 F.4th 805, 827 (7th Cir. 2024) ("[D]ecisions impeding a prisoner's ability to move freely throughout a facility and discouraging his participation in prison activities can be addressed under the ADA and the Rehabilitation Act.") (listing cases); *Edwards v. Dart*, No. 21 C 5665, 2022 WL 3543474, at *5 (N.D.Ill. Aug. 17, 2022) ("[A]ccess to sleep and sleeping facilities is covered by [the ADA and Rehabilitation Act].") (listing cases); *Lewis v. Mathias*, 1:25-cv-01067-JEH, 2025 WL 2415742, at *3 (C.D.Ill. Aug. 20, 2025) ("The medical care provided to [detainees] . . . qualifies as a 'service' that disabled detainees must receive indiscriminately under the ADA [or Rehabilitation Act]."). Indeed, courts have found that access to meals, showers, outdoor recreation, and educational and vocational programs can all qualify as programs or activities under the ADA and Rehabilitation Act, particularly at the pleading stage. *Georgia*, 546 U.S. at 157 (educational and vocational programs); *Jaros*, 684 F.3d at 672 (meals and showers); *Norfleet v. Walker*, 684 F.3d 688, 689–90 (7th Cir. 2012) (outdoor recreation).

The moving defendants argue that "a prison's simply failing to attend to the medical needs of its disabled prisoners" is not a violation of the Rehabilitation Act, citing *Estate of Morris v. Jeffreys*, but that case is readily distinguishable. (Dckt. #71 at 6) (citing No. 3:20-cv-50320, 2021 WL 3187699, at *4 (N.D.Ill. July 28, 2021)). In *Jeffreys*, the court granted

11

defendants' motion to dismiss plaintiff's ADA and Rehabilitation Act claims, noting that neither statute "create[s] a remedy for medical malpractice." *Jeffreys*, 2021 WL 3187699, at \*4.  But there, plaintiff alleged that IDOC "failed to provide adequate treatment" due to the lack of mental health staff at his prison.  *Id.* at \*5.  Here, on the other hand, Jones does not allege that he received merely inadequate treatment—he alleges that he was denied access to any medical care whatsoever, and that he was denied sleep and mobility as a result.  (Dckt. #61 ¶17; Dckt. #69 ¶7). This distinction distances Jones' complaint from the kind of medical malpractice claims to which courts have found the ADA and Rehabilitation Act inapplicable.  *See McDaniel*, 115 F.4th at 825–28.  Moreover, *Jeffreys* distinguishes the exact scenario that Jones pleads: a situation where an inmate is denied access to a treatment or medication "*that he was prescribed*," which the court reasoned can constitute a violation of the ADA/Rehabilitation Act.  *Jeffreys*, 2021 WL 3187699, at \*6 (emphasis included).

Jones' allegations plausibly concern access to programs or activities that are covered by the Rehabilitation Act.

### 3.   Jones Adequately Alleges That He Was Denied Access Because of His Disability.

Next, the court considers whether Jones plausibly alleges that he was denied access to medical care, mobility, or sleep because of his disability.

"It is well established that refusing to make reasonable accommodations is tantamount to denying access." *McDaniel*, 115 F.4th at 823 (cleaned up).  While prison officials are not required to provide a disabled prisoner with the particular accommodations he prefers, they must "provide some reasonable accommodation . . . that ensures that the person with disabilities has equal access to the benefits of [covered] programs or activities." *Id.* (cleaned up).  "An unreasonable delay in providing an accommodation for an [individual's] known disability can

12

amount to a failure to accommodate his disability that violates the Rehabilitation Act." *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020); *see also Swain v. Wormuth*, 41 F.4th 892, 898 (7th Cir. 2022). Whether a particular delay is unreasonable "turns on the totality of the circumstances, including, but not limited to, such factors as the [defendant's] good faith in attempting to accommodate the disability, the length of the delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the [defendant] offered alternative accommodations." *McCray*, 966 F.3d at 621.

Here, based on the totality of the circumstances, Jones plausibly alleges that IDOC and Wexford unreasonably delayed in accommodating his disability. Jones waited nearly a month for his preexisting prescription to be filled. (Dckt. #69 at 9). Neither he nor the moving defendants articulate any reason for the delay, but filling his prescription was arguably not a complex or burdensome task. His neck, back, and leg conditions were longstanding: between 2016 and 2023, he was regularly transported from Stateville Correctional Center to University of Illinois hospitals to receive pain injections, (Dckt. #69 ¶10), and in 2019 he received formal diagnoses of chronic neck pain, degenerative disc disease, leg radiculopathy, and lumbosacral axial pain, (Dckt. #61 ¶13). He received his prescriptions for Tramadol and Gabapentin as early as February 2, 2023. (Dckt. #69 ¶11). Beginning February 17, 2023, in addition to near-weekly sick calls in which he unsuccessfully sought medical attention, (Dckt. #61 ¶¶15–18), Jones requested his prescriptions from medical staff at Stateville Correctional Center every day until March 17, 2023, (Dckt. #69 ¶15). Defendants offered Jones no alternative accommodations at any point. (Dckt. #61 ¶20). Their month-long failure to provide any accommodation for a pain condition from which Jones had suffered for over five years creates at least a plausible claim that, in doing so, IDOC and Wexford violated the Rehabilitation Act.

13

The moving defendants' other arguments are unavailing. They first argue that Jones cannot state a claim under the Rehabilitation Act because he requested no alternative accommodations "while his medication was out of stock." (Dckt. 71 at 7). Even if Jones had alleged that his medication was out of stock, which he did not, his failure to seek alternatives would not be a basis for dismissing his claim. The question the Court asks is whether defendants *provided* alternative accommodations, not whether Jones *requested* them in addition to requesting his prescribed pain medication. *See McCray*, 966 F.3d at 621; *Swain*, 41 F.4th at 898. Moreover, the provision of alternative accommodations is only one factor in the court's totality-of-the-circumstances evaluation of the reasonableness of defendants' delay. *Id.* Second, the moving defendants argue, citing *Shaw v. Williams*, No. 16-cv-1065, 2018 WL 3740665, at *32 (N.D.Ill. Aug. 7, 2018), that delays in providing a reasonable accommodation can last several months and remain reasonable, absent a showing of bad faith. (Dckt. #71 at 7). That case, however, considered a motion for summary judgment; defendants' argument is inapt at the pleadings stage, where the court construes the complaint in favor of the plaintiff and looks only for allegations sufficient to support a plausible claim for relief. *Horist*, 941 F.3d at 278.

## CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to dismiss, (Dckt. #64), as to plaintiff's Fourteenth Amendment claims; *Monell* claims against the IDOC, Truitt, and Osbourne; Eighth Amendment claims against the IDOC; Eighth Amendment claims for damages pursuant to Section 1983 against Truitt and Osbourne in their official capacities; and ADA/Rehabilitation Act claims against individual defendants. The Court denies defendants' motion to dismiss as to Jones' Eighth Amendment claims for injunctive relief pursuant to Section 1983 against Truitt and Osbourne in their official capacities, as well as Jones' ADA/Rehabilitation Act claims against the IDOC and Wexford. (*Id.*). Plaintiff is granted leave

to amend his complaint on or before March 20, 2026, to allege ADA/Rehabilitation Act claims against defendants IDOC and Wexford.  Defendants are ordered to answer remaining non-dismissed claims in plaintiff's Complaint by April 10, 2026.

**DATE: March 6, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**

15